Yes, please. Whenever you're ready. Glad to see you're doing well enough to be here. Thanks to both sides for, I know it was a last minute rescheduling. I appreciate both sides being here. I wanted to start off that way. On a personal note, I wanted to thank the court and all the staff for being so compassionate and understanding and responsive to what my needs have been over the last few months. I had open heart surgery. So, today's the first day I've been in court in about five or six months. I can only go down from here, right? Thank you for letting me be here. May it please the court, counsel, and my clients who are sitting here in the back today. My name is Martin Sirkill. Our firm represents a student E. M. in a case against the Austin Independent School District regarding violations of her rights pursuant to Title IX of the Educational Acts of 1972. The main issue, I think, in our case, even though there's lots of facts, is really did the magistrate and by extension the district court follow the appropriate standards when reviewing a case under Federal Rule of Civil Procedure 12b-6? Meaning, if I was here before you at trial, my duty would be to prove to you, as jurors of the court, that the elements of Title IX claim are met, and in particular, I think we'll talk more about whether or not the school district was deliberately indifferent to the rights of my client. If we were here looking at a Rule 56 motion for summary judgment, I would be here having to argue that we had violated my client's rights under Title IX, specifically related to the deliberate indifference standard. But we're not here arguing those two issues. We're here under a 12b-6 motion. We're here only whether or not we have allegations, and I want to use the word allegations carefully because my good friend and counsel for the school district used the term that they just have simple allegations in their response. Well, that's all I have to do today is have simple allegations. I have to have plausible ones, nevertheless, but allegations they can be, and we think we've met that standard. And I think your case like this often would go to discovery, as you're suggesting, but it seems like in this case, I mean, there's a lot of allegations. There's a lot of information. There was a school district investigation. I guess I just don't even see what would come out in discovery that's not already out there. I mean, it seems like there's a pretty much full accounting of what happened, and the lower court said, we've looked at all that, and it doesn't rise to the level of a violation. Now, maybe you're asking us to disagree with that, but what more information is there that would come out in this case? Well, let me, without being cutesy about it, I think if I was here under motion for summary judgment, I still think I'd make my case, just to be frank. But let me take a step back and then answer that again, okay? The elements of a Title IX claim, first and foremost, was whether the student was a member of a protected class. Well, we know that that's true. That's uncontroverted. The next issue is whether or not she was bullied, harassed because of sex or gender. Well, that's been contrived by counsel for the school district by saying that, well, it's just typical juvenile behavior, typical high school behavior that the case law shows doesn't really fall under the umbrella of sexual harassment. But even counsel uses the term puppy love in using some other types of phrases about how my client and the young man that was involved with her related to each other. And clearly, if we want to use the term puppy love for one purpose, clearly it shows the other purpose that she was bullied and harassed because of also the male-female relationship. The next issue, of course, is... You know, in the case, really, assuming all of the elements of peer harassment here, it's whether the school board was, or whether the school was reasonable in responding to the and I want you to tell me why they were not reasonable in the light of the circumstances. Absolutely, Your Honor. And why we as federal judges should intervene in these day-to-day affairs of one in the school. I mean, unless there's an egregious disregard of their responsibilities. That's a perfect question. That's ultimately what I was going to talk about, the deliberative differentiation. The school district, in their brief, says that they do the following. They developed a safety plan to shadow the student. Of course, that didn't work. When that didn't work, they modified the safety plan to shadow the student. Actually, let me back up. The first safety plan was to follow the perpetrator. That didn't work. The next safety plan... Then why was that unreasonable for them to attempt to address the problem in that way? And was it their fault that it didn't work, or why didn't it work? Because, you know, nobody is perfect, and nobody's going to create a perfect solution. That's correct, Your Honor. We were before you in a case some years ago called Lance, versus Lewisville ISD. It was a bullying and harassment case dealing with a boy with a disability. And the case law is similar for the deliberate indifference standard, whether it be Section 504 or Title IX or Title VI. You know, we use the same standards. So in Lance's case, the court, this court, went through a number of what I call checklists of things that school districts can and should do to avoid being considered deliberately indifferent. Well, they need to investigate claims early. They need to assess the effectiveness. They need to... This is what happened in the Lance case, by the way. There, they observed the student in class. They also sent teachers into the class to address the harassment and teach the teachers how to be observant and how to intervene. They also taught the students about harassment. They gave the perpetrator counsel... Tell me here, though, in this case, what was their failing? What would you have them do that they did not do? Well, actually, Your Honor, all they did was talk. They didn't do anything. Well, tell me... They met with the parents, and they said they were going to do a safety plan. They met with the parents. They said they were going to do a safety plan. They met with the parents. They said they were going to put a security guard to watch the child. Well, they did do all of that. No, they didn't. Well, I mean, according to the record... I mean, in other words, it may not have been effective, but they did have security guards, and I understand the security guards didn't always come at the moment that she requested them to be there and so on, and that there were failures in the implementation of the plan, but there was a plan that was faulty, and as I understand it, there were five instances that occurred after the plan was adopted or after the school got involved in it, and all of those were simply sightings. None of them were person-on-person contact that the school knew about. Am I wrong about that? No, you're correct, Your Honor, but I think that actually... So why wasn't that, in a certain limited sense, an effective plan? It did stop the one-on-one harassment. I mean, I feel very, you know, very empathetic and sympathetic for your client. I know you do. But that's... One of the things I joke I like to do when I come before the court, I like to go back and read the original case. So I went back and I read Davis versus the Monroe School Board case again, and in that case, there were seven instances of harassment over the course of a school year. Our client has more than that. Our client has more than that. In that case... But the problem is looking at what, I mean, just to follow up on what Judge Jolly's asking, the legal word is deliberate indifference. I mean, what that really means in real people language is the school district really didn't care that this harassment continued. That's what you have to show, deliberately indifferent. They didn't really care if this continued. And so if they took these steps... I mean, it's a delicate situation for the school because your client obviously feels like she's been the victim of harassment, which is a serious issue, but they've also got a suicidal team where they're trying to balance both of these interests, and they come up with a plan. I just don't see how having a plan like that, even if it proves completely ineffective, shows that they didn't care about the harassment. Davis answers that, Your Honor. Davis absolutely says that a plan at one point may be considered reasonable, after time can be unreasonable. In fact, there's case law across the country that addresses with that. But when your clients went to the school and said, oh, there's still a problem, the guard's not here all the time, I mean, didn't they take additional steps? It seems to me they were always responsive, maybe not responsive exactly how you wanted, but they didn't say, sorry, we don't care what happens. I think I want to go back to the pleadings again. The pleadings say that they met, they put together a plan to shadow the young man. They didn't do that. They met again to have a plan to shadow my client. They didn't do that either. I thought they never did. I thought it was just that the guard wasn't always there. That's the last one. That's the last one. The third one was they were going to have a guard that also shadowed her. That didn't work either. So let's go back to Davis again. Davis says, yes, school district does something, they're not considered to be. I don't want to interfere with your argument so much, but I'm not concerned about what What was the act that they engaged in that showed deliberate indifference to the complaint of the parents and the child? Deliberate indifference. I have to look at just about it. I specialize in educational. So I will submit to the court that almost every single bullying and harassment case across the country and across the circuits looks at one thing almost always first. Did the perpetrator get punished? Was there any intervention that affected the perpetrator? That did not occur in this case. Tell me what they should have punished the perpetrator for. What was his offense that would have been punishable by expulsion or any other kind of That's another good question, Your Honor. You don't have to go that far. There's lots of other types of intervention. You're the one that brought that up. You're the one that brought up punishment. I'm asking you to follow up on your argument. What I'm saying is there's lots of different types of punishment. Yes, on one far extreme was expulsion, but on another thing. Okay, what kind of punishment was appropriate in this case? Well, what they did in the Lance case, they had in-school suspension. They separated the child for a few days. In the SS versus Kentucky case, they also separated I thought they separated the child. I mean, made efforts to separate as much as they could these two students. Well, and here he was out of school for a number of days after the attempted suicide just because of mental health treatment. He was out of school. Well, he was put in a mental hospital because of parenting. In fact, unfortunately and sadly, that issue even goes more strongly to the totality of the circumstances. It's one thing being reasonable for the regular education student and saying, oh, that they put together a plan. It's another thing dealing with a seriously mentally ill person who's You know, you still have not, pardon me, but you still have not told me what the school did that was indicated deliberate indifference to the complaints of the family or to the needs of the child, especially given the fact that they had, you know, a disabled child here that was in serious mental problems on the one hand that they had to take care of and the victim here that they also had to take care of. I mean, and for us to get right in the middle of that, I just don't. Unless you can show me how they were deliberately indifferent. This is something that's going to be worked out on the local level. Granted they did something. Granted they did something. But once again, the analysis doesn't stop there. The analysis also is, and Davis speaks to this and also Progeny does as well, is that after something is done, there's a duty to assess its effectiveness. So what should they have done? Punish the suicidal student? Now let me go backwards. When they said they were going to put a shadow on the young man, they should have made sure they had a shadow on the young man. When they said they were going to have a shadow on the young lady, they should have kept a shadow on the young lady. When they said they were going to have a security guard available, they should have had a security guard available. And that's only part of the story. I'm sorry, Your Honor. Let me back up a little bit. At some point earlier in your argument we were talking about the elements. That's what I've been focused on since I started reading the briefs in this case. Three of the elements it appeared you touched upon, it seems like the other two go hand in hand. Obviously the deliberately indifferent element is the fifth and penultimate element. Yes, Your Honor. That we've spent most of our time talking about. The first one was whether the district had actual knowledge of the harassment. When do you contend the district had actual knowledge and should have acted? The spring of 2017 semester nobody – that's uncontroverted. Everyone agrees they had notice then. The fall is a very, very good question because in the fall of 2017 I submitted to the court that they were on notice. 2016. I mean of 2016, forgive me. They were on notice and the inferences of the facts certainly show they were on notice. The little boy acted out in class so much so that the entire class got evacuated. It's a fair interest that school officials knew about it. He stabbed himself in class. It's a fair inference that school officials knew about that. They met with school officials. Now counsel for the school district says, well, that's not specific enough. But if I were to use the term principal or vice principal or superintendent, that certainly would have been specific enough. It seems to me for the pleading states in the 12B6 motion, I can use the term school officials and still satisfy that element. So I believe in the fall of 2016 they were on notice, Your Honor. So you're saying that deliberately indifferent begins at that point? Yes. In fact, in the fall they did nothing. All right. Thank you. You've got five minutes for rebuttal. We'll hear from the school district. Good morning and may it please the Court. My name is Jonathan Bresch for the Austin Independent School District. I think what came through in my colleague's argument most clearly is that he couldn't articulate what additional step the school district should have taken. Judge Jolly, as you pointed out, it's flexible standard under deliberate indifference. The Supreme Court and this court in its most recent Title IX case, Ioffe v. Louisville Independent School District, has reiterated that schools retain flexibility to tailor their response to specific situations. So what part of the complaint since we're talking about a Rule 12B6, and most of these cases come to us on a granting of summary judgment, what part of the, I believe it's the second amended complaint that was filed, that's the operative complaint in this case, what paragraphs would you identify as being sufficient for the court to consider that the school was not deliberately indifferent? We're looking at only his pleading at this point. So how does his pleading plug into satisfying us that the school was not deliberately indifferent? Yes, Your Honor. I could probably word the question better, but if you know what I'm talking about, tell me where it is in the complaint. I think I do understand the question, and if you'll bear with me one second. Okay. In the complaint, specifically in Record 94, page 94 of the record, the plaintiff pleads that the school district, and there was discussion about this this morning, the school district developed a safety plan, modified a safety plan. The plaintiff affirmatively pleads that the school district removed the counselor at the parent's request, that the plaintiff had the objection to Ms. May, that they changed counselors. The plaintiff affirmatively pleads that the school district made representations that would provide escorts, and in one instance, affirmatively pleads that the security guard's name was given to the plaintiff, and that he did show up. He was late, but he did show up. Being late is not caring. It's not deliberately indifferent. Each of those facts, based upon what the school district knew, shows us that they responded. What's more, plaintiff's own allegations pleading how many instances of contact there were showed that the plan was largely effective. In fact, the magistrate judge noted that they only had five instances, and according to EM's own statement, which was appended to the original complaint and still referenced in the second amended complaint, that she never had direct contact with him again after the fall of 2016 when they exchanged text messages. Under those circumstances, the plaintiff affirmatively pled that the school district responded to the information they knew. What of the claim, the last question I asked your opponent, pertained to a time period in the fall of 2016 up through, I believe, January is when the court pinpointed, if I'm not mistaken, January 2017. What about the fall of 2016? Was there not some type of affirmative obligation, I believe on the counselor, to report to the principal or other administrative personnel what was going on? Yes, Your Honor, so let me start. I agree in January 2017 everybody had knowledge based upon the plaintiff's parent's complaint. Looking back to the fall of 2016, no, Your Honor. We can't tell that from the pleadings. On the one hand, the counselor is not an appropriate school official, and we did brief this below. The magistrate judge did not address it, but it has to be someone who has the authority to take corrective action. The plaintiff put the counselor's policies into the record, and they are before the court, which show that the counselor labors under a duty to report to someone else. Now, if the counselor doesn't report to someone else, then they fail to comply with the school district policy, and you can't hold the school district responsible under vicarious liability. That's the touchstone of the deliberate indifference standard and the appropriate person. But at Rule 12, why not infer that the counselor honored that policy and reported it up the chain? Could potentially, Your Honor, but at the same time, we have to look at what they pled the counselor knew. And the magistrate, I thought, did a very nice job of analyzing what plaintiffs pled the counselor knew. And that was that DM's parents, the young man, had come to her concerned about his situation, not about EM's. They never pled that he was harassing her. They never pled that DM's parents told the counselor any specifics about the harassment. So based upon the information that they pled was conveyed to the counselor, that's not enough to give actual knowledge. And, in fact, in their reply brief, and I believe it's on page 14 of the reply brief, plaintiffs essentially admit that they're guessing that school officials knew because they refer to them as unknown school officials. It would be quite different if the plaintiffs had affirmatively pled that on date X the principal and appropriate school official had knowledge, but they don't do that. They plead only that it would be a reasonable inference. Well, it's also a reasonable inference that they didn't divine anything from the incident in the choir that was referenced by opposing counsel. Doesn't he also allege that at the time of the suicide attempt, the DM's suicide attempt, which I think is fall of 2016, again before our January bright line date that we've been able to pinpoint, the latest date, doesn't he also allege that the counselor was to call or stated that she would call the plaintiff's parents in this case and that that did not happen? Correct. Would that not be a fact that we could infer deliberate indifference? Yes, you're correct that they plead that statement, Your Honor. The alleged suicide attempt was in January of 2017, so I believe it was January 18. That's sort of our trigger date that we're not really fighting about the state of knowledge after that for these purposes. That's not sufficient for deliberate indifference, Your Honor. That would be a single failing, a single failure to follow a policy by one employee, which was followed up the next day with communications when the plaintiff's parents began communicating. Again, it's not sufficient, but going back to what Judge Costa just asked, would that not be something that an inference can be made? There's been no discovery. Correct me if I'm wrong. This is at the Rule 12 stage, so I'm assuming that there was no preliminary discovery, and even if there was, that wasn't the way the motion was styled, nor was it the way the court addressed the motion. The court didn't ask for any additional information or convert it to a Rule 56. Correct, Your Honor. There was no discovery conducted below. It was purely brought to the court as a Rule 12b-6 motion. I do believe, and to Judge Costa's first question, I believe, I don't think anything more that could be added. This was the second amended complaint. These are facts that are uniquely within the plaintiff's knowledge. She's complaining of harassment she experienced based upon information she conveyed to school officials. Noticeably absent from that is any pleading that she ever reported the underlying conduct. What the counselor was told in the fall is something, though, that discovery could have fleshed out. I agree with you on most of it. It's within the knowledge of the plaintiff. Yes, Your Honor, that is one piece, one piece where discovery could have fleshed out an issue, but I think we still look at it from the standpoint of she's not an appropriate school official for purposes of providing notice for Title IX. But to your question, Judge Ingleheart, that's not enough. That would not be enough for deliberate indifference. The fact that she said she would call but didn't call the same day, I could not find a case. She didn't call at all until much later. Is that correct? The next day the parents called. So the counselor, I believe it was January 18th, was the court-sued defendant. Called the school principal and, I believe, the AISD Police Department. So you're talking about a gap of essentially a day. This court held last summer, I think in Ramos v. Cramar, that a failure to notify in a very quick circumstance like that is insufficient for deliberate indifference. And because deliberate indifference also, it can't play out just on that one instance. We're looking at the response in total. And once we have an undisputed set of facts where the plaintiffs have complained and the school district is engaged with them, the response is really quite effective. This is the case Davis talks about that is an appropriate motion to dismiss case because I think while we can fight more than we did below about appropriate official and state of actual knowledge, when we move to the deliberate indifference standard in the spring, the school district was remarkably successful. Plaintiffs cannot cite a single case with similar facts where visual sightings are enough. Subsequent visual sightings are enough to support a finding of deliberate indifference. They try to rely on the district court case, the Hernandez v. Baylor case, but that is a vastly different set of facts involving underlying criminal sexual assault. We know from this court's opinion in IF, issued within the past couple of months, that we look at the specific facts. And secondary schools have the greatest flexibility under Title IX to tailor a response because they're dealing with immature people who are not adults. This court recognized as much in the Sanchez v. Carrollton Farmers Branch case. Conduct that we wouldn't accept amongst adults is regrettably part and parcel of what happens with children. Looking at that response and to Judge Jolly's question, there was no other step that the school district could have taken or should have taken or that it was necessary to take to attempt to remediate the harm that the plaintiff complained of. Here, the law is quite clear. A school district is not deliberately indifferent even if they fail to prevent future harm. We cite the Dallas case where there were subsequent sexual assaults that occurred after the principal's efforts. The Lance case that opposing counsel cited, that culminated in suicide. Plainly, the school district's efforts were unsuccessful there, but this court still found the absence of deliberate indifference because judged on the facts, the school district's response was reasonable. And the test is that the school district's response has to be clearly unreasonable, to your point that they didn't care. As pled, plaintiff pled facts showing that the school district responded, the school district cared, they tried, it didn't ameliorate things to plaintiff's satisfaction, but as the magistrate correctly noted, it was largely successful. If there are no further questions from the bench, I'll return the remainder of my time to the court. Thank you. All right, thank you, Mr. Brush. Mr. Butler, Mr. O'Neill. Thank you. Once again, the question is what should the school district do? And the case law is clear. They should investigate the claims. What's your best case on deliberate indifference? What do you think the closest case is that supports us finding deliberate indifference here? Well, I think we learn more, not what cases tell us that match. I think I learn more when cases tell me what deliberate indifference is and what they didn't do. Facts matter a lot. I'm just wondering if there's a factually... Well, yes, exactly. I understand, Your Honor. Thank you for helping me on that. So once again, I want to go back to Lance's case that was before this court and Fennell's case that was before this court as well, Fennell v. Marion ISD. So once again, to reiterate, under Lance, they investigated the claims, they gave parents notice of the procedural rights. They should give parents notice of the procedural rights. They should get notice of the investigation. They should get notice of the rights of appeal. They should get a written report. The family got none of these. And Lance, the students got counseling, both victim and perpetrator. That didn't happen in this case. The students were observed in class. That didn't happen in this case. And there, the teachers went into the classroom to teach the other teachers. That didn't happen in this case. And Fennell, they spoke to the other child's parents and they suspended him for a couple of days. That didn't happen in this case. They gave the child an aid to walk through the halls, which worked, by the way. Very, very important. In that case, there was no discussion about modifying anything. They set a plan in place and they adhered to it. The Fifth Circuit said, you know what? That shows there was no deliberate indifference. So they had an aid and it worked. They let her eat in a safe place all the time. They let her park her car in a safe place. No deliberate indifference. They held a special assembly for the entire student body. They cooperated with the police. The Austin Independent School District did none of these. They did none of these things. So yes, they said a lot, but they did very, very, very little. And what they did do failed. Once again, Davis teaches us the analysis just doesn't stop at what they did, but it also has to show what may be reasonable at one time can be unreasonable over time. We submit to the court the AISD was unreasonable over time. I want to go back to the first question you asked me about what could discovery do. Well, once again, discovery can help us determine what the school district officials knew in the fall of 2016. The school districts have under Chapter 37 an individual that deals with student behaviors. It's not unreasonable to think that when a young man had the class evacuated, that person who's in charge of student behaviors for the entire campus knew about it. And maybe if not then, maybe when he stabbed himself and certainly when they talked with the school counselor. So once again, discovery could help us flush out that issue too because I don't think there's any disagreement that in the fall, if they were on notice, and of course we submit they are, but if they were on notice, they did absolutely nothing. There's one piece of the case that happens in a lot of cases dealing with sexual harassment, both in and out of schools. And it's not only the initial harassment or rape or molestation that a student may experience, it's the secondary experience they have when they're dealing with officials about what happens next. And one of the things that troubled me in this case, and it may be important to you all, it may not be, it's important to me because Discovery would let us know about this, was the intent for the school district officials to cover up what happened. They tried to talk the young lady out of filing a complaint. They put pressure upon another student that came to her support. And I think those are important issues that school districts should not be permitted to occur. One of the things that happens when we come before the Fifth Circuit, of course, is that when you make a decision, the decision affects everybody, not just AISD, but all the school districts in Texas and all the school districts in the Fifth Circuit. And I think school districts need to know that if a kid gets sexually harassed, they don't try and talk them out of it. They investigate it and they provide them services. Thank you very much. I appreciate your time today. Once again, thank you for letting me be here on such short notice. It means a lot to me. Thank you. Thanks to both sides for the argument. The case is submitted.